UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
                                  :
UNITED STATES OF AMERICA          :
                                  :    **SUPERSEDING INDICTMENT**
    - v. -                        :
                                  :    S1 21 Cr. 88 (JSR)
CELVIN FREEMAN,                   :
                                  :
            Defendant.            :
                                  :
- - - - - - - - - - - - - - - - - X

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### BACKGROUND

1.  At all times relevant to this Indictment, CELVIN
FREEMAN, the defendant, and others known and unknown, were
members of a criminal enterprise (the "Enterprise") based in
West Africa that committed a series of frauds against
individuals and businesses located across the United States,
including in the Southern District of New York.  The frauds
perpetrated by the Enterprise have consisted of, among other
frauds, business email compromises, romance scams, and fraud
schemes related to the novel coronavirus/COVID-19 pandemic.

### MEANS AND METHODS OF THE CONSPIRACY

2.  The objective of the Enterprise's business email
compromise fraud scheme was to trick and deceive businesses into
wiring funds into accounts controlled by the Enterprise.

Members of the Enterprise created email accounts with slight variations of email accounts used by employees of a victim company or third parties engaged in business with a company to "spoof" or impersonate those employees or third parties. These fake email accounts were specifically designed to trick other employees of the company with access to the company's finances into thinking the fake email accounts were authentic. The fake email accounts were then used to send instructions to wire money to certain bank accounts and also included fake authorization letters for the wire transfers that contained forged signatures of company employees. By utilizing this method of deception, the Enterprise sought to trick the victims into transferring hundreds of thousands of dollars to bank accounts the victims believed were under the control of legitimate recipients of the funds as part of normal business operations, when in fact the bank accounts were under the control of members of the Enterprise.

3.    The Enterprise conducted the romance scams by using electronic messages sent via email, text messaging, or online dating websites that deceived the victims, many of whom were vulnerable, older men and women who lived alone, into believing the victim was in a romantic relationship with a fake identity assumed by members of the Enterprise. Once members of the Enterprise had gained the trust of the victims using the fake

2

identity, they used false pretenses to cause the victims to wire money to bank accounts the victims believed were controlled by their romantic interests, when in fact the bank accounts were controlled by members of the Enterprise.  At times, the members of the Enterprise also used false pretenses to cause the victims to receive funds in the victims' bank accounts, which, unbeknownst to the victims, were fraud proceeds, and to transfer those funds to accounts under the control of members of the Enterprise.  The members of the Enterprise, posing as the romantic interest of the victims, also introduced the victims to other individuals purporting to be, for example, consultants or lawyers, who then used false pretenses to cause the victims to wire money to bank accounts controlled by members of the Enterprise.

4.    The Enterprise conducted the COVID-19 relief-related fraud schemes by submitting fraudulent loan applications through a loan program of the United States Small Business Administration (the "SBA") designed to provide relief to small businesses during the novel coronavirus/COVID-19 pandemic, namely the Economic Injury Disaster Loan ("EIDL") Program.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19

pandemic.  The CARES Act expanded the EIDL Program, which

provided U.S. small businesses with low-interest loans to

provide vital economic support to help overcome the temporary

loss of revenue they are experiencing due to COVID-19.  The

Enterprise submitted fraudulent EIDL applications in the names

of actual companies to the SBA and when an EIDL loan was

approved, the funds were ultimately deposited in bank accounts

controlled by members of the Enterprise.

5.    CELVIN FREEMAN, the defendant, and other members of

the Enterprise, received fraud proceeds from victims of the

Enterprise in personal and business bank accounts that they

controlled in New York, New Jersey, Virginia, and elsewhere.

The business bank accounts were opened in the names of companies

formed by members of the Enterprise that were purportedly

involved in, among other things, automobile sales, food imports

and exports, and freight trucking and shipping.  These companies

include, but are not limited to, Freeman Autos LLC owned and

controlled by FREEMAN.  In addition to receiving fraud proceeds

directly from victims of the Enterprise, FREEMAN also received

fraud proceeds from other members of the Enterprise located in

the United States, who themselves received fraud proceeds

directly from victims.

6.    Once CELVIN FREEMAN, the defendant, and other members

of the Enterprise received fraud proceeds from victims or other

members of the Enterprise, they laundered those fraud proceeds to other members of the Enterprise abroad.  FREEMAN and other members of the Enterprise primarily laundered the fraud proceeds through their businesses by using the proceeds to purchase automobiles, food products, and other goods and shipping those products to Ghana and elsewhere.  These transactions had the appearance of legitimate business transactions when, in fact, the products had been purchased using the proceeds of fraud schemes.  This trade-based money laundering scheme was designed to obscure the origin of the fraud proceeds as well as the identity of the ultimate beneficiaries of these schemes.

### STATUTORY ALLEGATIONS

7.   From at least in or about 2014 through in or about February 2021, in the Southern District of New York and elsewhere, CELVIN FREEMAN, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

8.   It was a part and an object of the conspiracy that CELVIN FREEMAN, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses,

5

representations, and promises, would and did transmit and cause
to be transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, in violation of Title 18,
United States Code, Section 1343, to wit, FREEMAN engaged in a
scheme to receive interstate wire transfers and cash deposits
from victims of fraud schemes via bank accounts controlled by
FREEMAN and other members of the conspiracy.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

### (Wire Fraud)

The Grand Jury further charges:

9.   The allegations contained in paragraphs 1 through 6 of
this Indictment are repeated and realleged as if fully set forth
herein.

10.   From in or about 2014 through in or about February
2021, in the Southern District of New York and elsewhere, CELVIN
FREEMAN, the defendant, willfully and knowingly, having devised
and intending to devise a scheme and artifice to defraud, and
for obtaining money and property by means of false and
fraudulent pretenses, representations, and promises, transmitted
and caused to be transmitted by means of wire, radio, and
television communication in interstate and foreign commerce,

writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, FREEMAN received interstate wire transfers and cash deposits from victims of fraud schemes via bank accounts controlled by FREEMAN.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE

### (Money Laundering Conspiracy)

The Grand Jury further charges:

11.   The allegations contained in paragraphs 1 through 6 of this Indictment are repeated and realleged as if fully set forth herein.

12.   From in or about 2014 through in or about February 2021, in the Southern District of New York and elsewhere, CELVIN FREEMAN, the defendant, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

13.   It was a part and object of the conspiracy that CELVIN FREEMAN, the defendant, and others known and unknown, knowing that the property involved in certain financial transactions represented proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified

unlawful activity, to wit, the wire fraud scheme charged in

Counts One and Two of this Indictment, in violation of Title 18,

United States Code, Sections 1343 and 1349, knowing that the

transactions were designed in whole and in part to conceal and

disguise the nature, location, source, ownership, and control of

the proceeds of specified unlawful activity, in violation of

Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

### COUNT FOUR

### (Conspiracy to Receive Stolen Money)

The Grand Jury further charges:

14.   The allegations contained in paragraphs 1 through 6 of

this Indictment are repeated and realleged as if fully set forth

herein.

15.   From in or about 2014 through in or about February

2021, in the Southern District of New York and elsewhere, CELVIN

FREEMAN, the defendant, and others known and unknown, willfully

and knowingly combined, conspired, confederated, and agreed

together and with each other to commit an offense against the

United States, to wit, a violation of Title 18, United States

Code, Section 2315.

16.   It was a part and object of the conspiracy that CELVIN

FREEMAN, the defendant, and others known and unknown, would and

did receive, possess, conceal, store, barter, sell, and dispose

of goods, wares, merchandise, securities, and money, of the value of $5,000 and more, which had crossed a state and United States boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, in violation of Title 18, United States Code, Section 2315.

OVERT ACTS

17. In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, was committed in the Southern District of New York and elsewhere:

a. On or about May 5, 2017, CELVIN FREEMAN, the defendant, received approximately $10,000 in fraud proceeds which FREEMAN transferred, at least in part, through a correspondent bank in Manhattan, New York.

b. On or about July 5, 2018, CELVIN FREEMAN, the defendant, received approximately $50,000 in fraud proceeds in a business bank account FREEMAN controlled in New Jersey.

(Title 18, United States Code, Section 371.)

## COUNT FIVE

### (Receipt of Stolen Money)

The Grand Jury further charges:

18.   The allegations contained in paragraphs 1 through 6 of this Indictment are repeated and realleged as if fully set forth herein.

19.   From in or about 2014 through in or about February 2021, in the Southern District of New York and elsewhere, CELVIN FREEMAN, the defendant, received, possessed, concealed, stored, bartered, sold, and disposed of goods, wares, merchandise, securities, and money, of the value of $5,000 and more, which had crossed a state and United States boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, to wit, FREEMAN received proceeds of fraud schemes which were transferred from bank accounts and money transfer locations outside of New York through at least one bank in New York and elsewhere.

(Title 18, United States Code, Sections 2315 and 2.)

## COUNT SIX

### (Conspiracy to Operate an Unlicensed
### Money Transmitting Business)

The Grand Jury further charges:

20.   The allegations contained in paragraphs 1 through 6 of
this Indictment are repeated and realleged as if fully set forth
herein.

21.   From in or about 2014 through in or about February
2021, in the Southern District of New York and elsewhere, CELVIN
FREEMAN, the defendant, and others known and unknown, willfully
and knowingly did combine, conspire, confederate, and agree
together and with each other to commit an offense against the
United States, to wit, operation of an unlicensed money
transmitting business, in violation of Title 18, United States
Code, Section 1960.

22.   It was a part and object of the conspiracy that CELVIN
FREEMAN, the defendant, and others known and unknown, knowingly
would and did conduct, control, manage, supervise, direct, and
own all and part of an unlicensed money transmitting business
affecting interstate and foreign commerce, to wit, a business
used to facilitate and transfer United States dollars to Ghana
and elsewhere, which: (a) was operated without an appropriate
money transmitting license in a State where such operation is
punishable as a misdemeanor or felony under State law, to wit,
New York, in violation of New York Banking Law Sections 640 *et*

11

*seq.*, and New Jersey, in violation of New Jersey Statutes

Annotated, Title 17, Sections 15C-1 *et. seq.*; and (b) failed to

comply with the money transmitting business registration

requirements set forth in Title 31, United States Code, Section

5330, and the regulations prescribed thereunder, in violation of

Title 18, United States Code, Section 1960.

(Title 18, United States Code, Section 371.)

### COUNT SEVEN

**(Operation of an Unlicensed Money Transmitting Business)**

The Grand Jury further charges:

23.   From at least in or about 2014 through in or about

February 2021, in the Southern District of New York and

elsewhere, CELVIN FREEMAN, the defendant, knowingly conducted,

controlled, managed, supervised, directed, and owned all and

part of an unlicensed money transmitting business affecting

interstate and foreign commerce which: (a) was operated without

an appropriate money transmitting license in a State where such

operation is punishable as a misdemeanor or felony under State

law, to wit, New York, in violation of New York Banking Law

Sections 640 *et seq.*, and New Jersey, in violation of New Jersey

Statutes Annotated, Title 17, Sections 15C-1 *et. seq.*; and (b)

failed to comply with the money transmitting business

registration requirements set forth in Title 31, United States

Code, Section 5330, and the regulations prescribed thereunder,

to wit, FREEMAN operated an unlicensed business located in New Jersey used to facilitate and transfer United States dollars to Ghana and elsewhere.

(Title 18, United States Code, Sections 1960 and 2.)

## FORFEITURE ALLEGATIONS

24.  As the result of committing the wire fraud and stolen property offenses charged in Counts One, Two, Four, and Five of this Indictment, CELVIN FREEMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

25.  As a result of committing the money laundering and unlicensed money transmitting business offenses alleged in Counts Three, Six, and Seven of this Indictment, CELVIN FREEMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, and any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

13

## Substitute Assets Provision

26.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_Damian Williams_ /SKR
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

**v.**

### CELVIN FREEMAN,

Defendant.

---

#### SUPERSEDING INDICTMENT

S1 21 Cr. 88 (JSR)

(18 U.S.C. §§ 371, 1343, 1349, 1956(h),
1960, 2315, and 2)

DAMIAN WILLIAMS
United States Attorney

_Brian Comth_
Foreperson